# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 9, 2002 Session

## STATE OF TENNESSEE v. LARENZO DESHAWN HARRIS[1]

### Direct Appeal from the Circuit Court for Carroll County
### No. 01CR-1682     C. Creed McGinley, Judge

_____

### No. W2001-02626-CCA-R3-CD - Filed August 30, 2002

_____

The defendant was convicted of possession of a Schedule II controlled substance with the intent to manufacture, deliver, or sell, a Class B felony; possession of a Schedule VI controlled substance with the intent to manufacture, deliver, or sell, a Class E felony; and possession of drug paraphernalia, a Class A misdemeanor. Following the denial of his motion for a new trial, he filed a timely appeal to this court, challenging the sufficiency of the evidence in support of his convictions. We affirm the defendant's convictions. However, because the jury assessed, and the trial court imposed, a fine for possession of a Schedule VI controlled substance that exceeds the statutory maximum, we remand the case to the trial court for a new jury to be impaneled to assess an appropriate fine in Count 2 and for entry of a corrected judgment as to the possession of drug paraphernalia conviction in Count 3.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Stephen D. Jackson, Jackson, Tennessee, for the appellant, Larenzo Deshawn Harris.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michael W. Catalano, Associate Solicitor General; G. Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]We note that the defendant's first name appears in the record as both "Larenzo" and "Lorenzo." It is the policy of this court, however, to spell the defendant's name as it appears on the indictment.

**OPINION**

On January 11, 2001, Huntingdon police officers, acting on a tip from a confidential informant that the defendant, Larenzo Deshawn Harris, was selling cocaine and marijuana from his residence, executed a search warrant at 199 Sixth Avenue in Huntingdon. Among other items the officers uncovered in the search were 3.1 grams of cocaine, 37.2 grams of marijuana, $375 in cash, plastic zip-lock sandwich bags, and a set of hand scales. The defendant was arrested at the scene, and subsequently indicted on one count of possession of a Schedule II controlled substance (cocaine) with the intent to manufacture, deliver, or sell, a Class B felony; one count of possession of a Schedule VI controlled substance (marijuana) with the intent to manufacture, deliver, or sell, a Class E felony; and one count of possession of drug paraphernalia with the intent to use, a Class A misdemeanor.

Sergeant Johnny Hill of the Huntingdon Police Department testified at the defendant's September 7, 2001, trial that he was a criminal investigator with years of experience and training in the detection of drugs. He said that he obtained the search warrant for the defendant's residence based on the tip from the confidential informant, who had provided reliable information in the past, and on the observations of police officers, who had watched the house for several days and seen a large amount of traffic coming and going from the front door. He and fellow officers arrived to execute the warrant at approximately 10:30 p.m. on January 11, 2001, pulling their vehicle into the front yard of the residence and stepping from it directly onto the porch.

The defendant met the officers at the front door, and was directed to sit on a living room couch. Another individual who was present in the house when the officers entered ran toward the back, and an officer followed her. Sergeant Hill remained in the living room, keeping his eyes on the defendant. As the defendant sat down, Sergeant Hill noticed him bend down and reach under the couch with one hand, in a motion that Sergeant Hill interpreted as placing an item under the couch. When Sergeant Hill looked in the area where the defendant had reached, he found "two . . . small plastic bags rolled up with some crack cocaine in them." Sergeant Hill said that the total weight of the cocaine, which was packaged separately, was 3.1 grams, which is about the size of what is commonly referred to as an "8 ball of cocaine." He explained that the usual practice is for smaller sized rocks, often about one-twentieth of a gram, to be broken off a larger eight-ball for individual sale. He estimated that the total street value of the drug was "12 hundred dollars or more."

In addition to the cocaine, Sergeant Hill also found fourteen small sandwich bags of marijuana, packaged in the typical manner for individual sale, together inside a larger plastic bag that was underneath the cushion on which the defendant was sitting. He said that the total value of the marijuana, at $20 per bag, was approximately $280. Officers also seized $375 in cash from the defendant's person. Sergeant Hill testified that he had known the defendant for some time, and that, to his knowledge, he had never had a job. Other items uncovered in the search were a partially smoked "blunt," (*i.e.*, marijuana rolled up into a piece of tobacco), several empty plastic zip-lock bags similar to the ones in which the marijuana was packaged, a set of hand scales used to weigh

marijuana, and a small two-way radio. Sergeant Hill testified that police officers were increasingly finding two-way radios used in the drug trade as a method for "lookouts" to radio warnings to drug dealers about the presence and activities of police officers. He said that the hand scales and some of the plastic zip-lock bags were discovered in a bedroom that contained a man's clothing and a jail property bag with the defendant's name on it. Other plastic bags were discovered in the kitchen, and the partially smoked blunt was discovered inside a small box that was in another bedroom. The only other individuals present in the home when the search was conducted were the defendant's mother, Stephanie Harris, and the defendant's sister. Neither had gone near the couch where the cocaine and marijuana were found. The defendant's mother was charged as a codefendant in the case, and subsequently pled guilty to lesser charges.

Sergeant Hill testified on cross-examination that the house was rented to the defendant's aunt, an elderly lady who was not present when the search was executed. To his knowledge and based upon his observations of the house over the previous few days, the defendant was the only adult male living in the home. He did not observe anything in the defendant's hand, either when the defendant met the officers at the door, or when he sat down on the couch. Nor did he see the defendant reach into his pockets before he made the gesture that led Sergeant Hill to believe he had placed something under the couch. Sergeant Hill agreed he probably would have seen the large bag of marijuana in the defendant's hand had the defendant placed it under the cushion after the officers entered the house. He acknowledged that none of the items recovered in the search were fingerprinted. He said that the defendant's mother was charged as a codefendant approximately one week later due to her knowledge of, and participation in, the defendant's drug selling activities in the home.

Brian Lee Eaton, a forensic scientist with the Tennessee Bureau of Investigation Crime Laboratory in Jackson, testified that he received two different substances to analyze in connection with the case: a plant material, which he determined to be marijuana, and a rock-like substance, which he determined to be 3.1 grams of cocaine. He identified the substances, which were admitted as exhibits. He acknowledged on cross-examination that he had not been asked to conduct fingerprint analyses of the substances.

The defendant elected not to testify, and no witnesses were presented on his behalf. After deliberating, the jury found him guilty of each count of the indictment, setting fines of $65,000 for the possession of a Schedule II controlled substance conviction, $50,000 for the possession of a Schedule VI controlled substance conviction, and $500 for the possession of drug paraphernalia conviction. Following a sentencing hearing, the trial court sentenced the defendant to concurrent terms of eleven years in the Department of Correction for possession of a Schedule II controlled substance, two years in the Department of Correction for possession of a Schedule VI controlled substance, and eleven months, twenty-nine days in the county jail for possession of drug

paraphernalia.[2] The trial court noted that the defendant had committed the instant offenses while on probation for a prior conviction for sale of a Schedule II controlled substance. Consequently, the trial court ordered that the sentences be served consecutively to the defendant's sentence on the prior drug conviction.

## ANALYSIS

### Sufficiency of the Evidence

The sole issue the defendant raises on appeal is whether the evidence was sufficient to support his convictions. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). This rule is applicable to findings of guilt based on circumstantial, as well as direct, evidence. See State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). Neither does this court substitute its inferences for those of the trier of fact in circumstantial evidence cases. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). To the contrary, we are required to give the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences that can be drawn from it in support of the convictions. Cabbage, 571 S.W.2d at 835.

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

---

[2] Although the defendant was convicted of possession of drug paraphernalia in Count 3 of the indictment, the judgment form erroneously shows both that the defendant was convicted of this offense and that the charge was dismissed. Accordingly, although affirming the conviction for this offense, we remand for entry of a corrected judgment.

-4-

The defendant contends that the evidence was insufficient to prove beyond a reasonable doubt his actual or constructive possession of the drugs and drug paraphernalia found in the home. He asserts that the proof was not sufficient to show that he placed the cocaine underneath the couch or possessed or even knew of the marijuana under the cushion. He further asserts that the jail property bag and male clothing found in the bedroom were not sufficient to establish he was a permanent resident of the home. He points out that his mother pled guilty to possessing the drugs and paraphernalia found in the home, and argues that neither his mere presence at the scene, nor association with his mother, is sufficient to show that he possessed the cocaine, marijuana, and drug paraphernalia at issue in the case. The State responds that the evidence was sufficient for the jury to infer the defendant's constructive and joint possession of the drugs and drug paraphernalia found in the home.

In order to convict the defendant of possession of a Schedule II controlled substance with the intent to manufacture, deliver, or sell, a Class B felony, the State had to prove that the defendant knowingly possessed more than .5 grams of cocaine with the intent to manufacture, deliver, or sell it. See Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (1997). To convict the defendant of possession of a Schedule VI controlled substance with the intent to manufacture, deliver, or sell, a Class E felony, the State had to show that he knowingly possessed not less than one-half ounce nor more than ten pounds of marijuana with the intent to manufacture, deliver, or sell it. See Tenn. Code Ann. § 39-17-417(a)(4), (g)(1) (1997). Finally, to convict him of possession of drug paraphernalia, a Class A misdemeanor, the State had to show that he used or possessed with the intent to use drug paraphernalia to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance[.]" Tenn. Code Ann. § 39-17-425(a)(1) (1997).

Possession of drugs and drug paraphernalia may occur either alone or jointly with others. See State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Possession may also be constructive as well as actual. See State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." Copeland, 677 S.W.2d at 476 (citation omitted).

An individual's mere presence in an area in which drugs are found, or association with another individual in possession of drugs, is not, alone, sufficient to establish constructive possession. Shaw, 37 S.W.3d at 903 (citing State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); Cooper, 736 S.W.2d at 129). In this case, however, there was evidence to show that the defendant was more than the uninformed and unaware visitor to the home he claims to have been. The defendant was home when the officers arrived to execute the search warrant and met them at the door. Men's clothing and a jail property bag bearing the defendant's name were found in one of the bedrooms of the house. Having watched the house for several days, Sergeant Hill was not

aware that any other man lived at the home. The hand scales used to weigh marijuana and plastic bags similar to those in which the marijuana was packaged were found in the bedroom which, from every indication, was that of the defendant. Possession of premises in which contraband is found creates an inference that the possessor had possession of the contraband. See Transou, 928 S.W.2d at 956; Armstrong v. State, 548 S.W.2d 334, 336 (Tenn. Crim. App. 1976). The cocaine was found underneath the couch on which the defendant was sitting, in the exact spot where Sergeant Hill had observed him reaching, and the marijuana was found almost directly underneath the defendant's body, under the cushion on which he was sitting. This evidence was sufficient for a rational trier of fact to infer the defendant's constructive, joint possession with his mother of the drugs and drug paraphernalia found in the home.

Moreover, a rational trier of fact could have reasonably concluded from the evidence that the defendant's possession of the drugs and drug paraphernalia was for the purpose of drug-selling activities he was conducting from the home. We, therefore, conclude that the evidence was sufficient to convict the defendant of possession of cocaine with the intent to manufacture, deliver, or sell; possession of marijuana with the intent to manufacture, deliver, or sell; and possession of drug paraphernalia. See State v. Ross, 49 S.W.3d 833, 846 (Tenn. 2001) (registration for and payment for hotel room, plus finding of defendant's items in the room, and his possession of a room key, resulted in inference that he possessed drugs in room); Patterson, 966 S.W.2d at 445 (defendants on the premises and in same areas where cocaine and drug paraphernalia were found constructively possessed both).

The State has noted that the $50,000 fine imposed for the defendant's conviction for possession of a Schedule VI controlled substance exceeds the maximum fine of $5000 authorized by Tennessee Code Annotated section 39-17-417(g)(1). Because the Tennessee Constitution provides every citizen the right to have a jury of his peers assess any fine in excess of $50, see Tenn. Const. art. VI, § 14, this court may not reduce the fine that was erroneously approved and imposed by the trial court. See State v. Martin, 940 S.W.2d 567, 570-71 (Tenn. 1997). "However, it is permissible to remand the case for a determination on the issue of the fine alone, so that defendant may have a jury assess a fine within the statutory limits." State v. John William Kuhlman, No. 01C01-9702-CC-00059, 1998 Tenn. Crim. App. LEXIS 452, at *9 (Tenn. Crim. App. Apr. 13, 1998), perm. to appeal denied (Tenn. Jan. 19, 1999). Accordingly, we affirm the defendant's convictions, but remand the case to the trial court to impanel a jury to fix an appropriate fine in Count 2 and for entry of a corrected judgment as to the possession of drug paraphernalia conviction in Count 3.

_____
ALAN E. GLENN, JUDGE